IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| *Plaintiff*, : | Case No. 1:24-cr-00056 |
| v. : | Judge Jeffery P. Hopkins |
| BRIAN BRADLEY, : | |
| *Defendant*. : | |

**OPINION AND ORDER**

Brian Bradley ("Bradley" or the "Defendant") is a Navy veteran and retired Ohio penal systems corrections officer who has been charged in the Indictment with one count of unlawful possession of four (4) unregistered machinegun conversion devices (hereinafter "machinegun") in violation of 18 U.S.C. § 922(o) and one count of unlawful possession of forty-six (46) unregistered firearm silencers in violation of 26 U.S.C. § 5861(d). Doc. 15, PageID 33. Bradley does not profess to be a constitutional scholar but believes in his heart that he has done nothing wrong in the eyes of the law. Seeking to vindicate himself, the Defendant filed this Motion to Dismiss both counts of the Indictment (the "Motion"), arguing that the charges against him are unconstitutional under the Second Amendment "as applied to him in this case." Doc. 22, PageID 46.

For the reasons set forth below, the Court must **DENY** the Defendant's Motion to Dismiss. Doc. 22.

I. **BACKGROUND**

On or around May 22, 2024, a federal grand jury indicted Defendant for illegal possession of a machinegun[1] in violation of 18 U.S.C. § 922(o) and unlawful possession of unregistered firearm silencers in violation of 26 U.S.C. § 5861(d). Doc. 15, PageID 33. On September 24, 2024, Defendant filed the instant Motion. Doc. 22. To the extent that the Court can decipher Defendant's assertions, Defendant lodges an as-applied challenge to the aforementioned statutes and appears to argue that: (i) machineguns and silencers qualify as "Arms" protected by United States Constitution under the Second Amendment; (ii) machineguns and silencers are not "dangerous and unusual" firearms; and (iii) mere possession or ownership of a machine gun or a silencer by a law abiding United States citizen cannot be prohibited because of the protections guaranteed under the Second Amendment. *Id.* at PageID 50–52.

---

[1] Count One of the Indictment alleges that Defendant violated 18 U.S.C. §§ 922(o), 921(a)(23), and 924(a)(2). Count One states:

> On or about May 7, 2024, in the Southern District of Ohio, the defendant, BRIAN BRADLEY, did knowingly possess a machinegun, as defined in 18 U.S.C. § 92l(a)(23), that is, 4 machinegun conversion devices with no manufacturer marks or serial numbers.

*See* Doc. 15, PageID 33.

Under 18 U.S.C. § 921(a)(23), "[t]he term 'machinegun' has the meaning given such term in section 5845(b) of the National Firearms Act. (26 U.S.C. § 5845(b))." Section 5845(b) defines a machinegun as follows:

> The term "machinegun" means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, *for use in converting a weapon into a machinegun*, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

*See* 26 U.S.C. § 5845(b) (emphasis added).

When read together, these statutes make clear that the Defendant's possession of unregistered machinegun conversion devices, as alleged in the Indictment, falls squarely within the ambit of the 18 U.S.C. § 922(o), which deems it unlawful for any person, with few exceptions not applicable here, to possess a machinegun.

2

In response, the Government argues that machineguns fall outside the plain text and scope of the Second Amendment under current Supreme Court precedent, as well as Sixth Circuit binding authority in *Hamblen v. United States*, which was not overruled by *Bruen*. Doc. 25, PageID 58–63. In the alternative, the Government contends that the regulation and prohibition of machineguns is supported on historical grounds. *Id.* at PageID 63–64. Finally, the Government asserts that the possession of silencers is not conduct protected under the plain text of the Second Amendment, *id.* at PageID 64–67, and that the regulation and prohibition of unregistered silencers is similarly consistent with the nation's historical tradition. *Id.* at PageID 68. The motion is fully briefed and ripe for adjudication.

## II.   STANDARD OF REVIEW

Under the Federal Rules of Criminal Procedure, "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). Here, the Defendant's Motion is governed by Federal Rule of Criminal Procedure 12(b)(3)(B)(v), which provides that a criminal defendant may move to dismiss an indictment based on the Government's "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). An indictment properly charges a criminal offense if it "first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). When considering a motion to dismiss an indictment, "the [c]ourt must view the [i]ndictment's factual allegations as true, and must determine only whether the indictment is valid on its face." *Costello v. United States*, 350 U.S. 359, 363 (1956); *see also United States v. Roman*, 17 F. Supp. 3d 706, 708 (S.D. Ohio 2014), *aff'd*, 795 F.3d 511 (6th Cir. 2015).

### III. LAW AND ANALYSIS

The Second Amendment of the Constitution states in no uncertain terms that, "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. In recent decades, the Supreme Court has interpreted the Second Amendment as protecting an individual person's "right to possess and carry weapons in case of confrontation" unrelated to militia service. *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 4 (2022) (quoting *Dist. of Columbia v. Heller*, 554 U.S. 570, 592 (2008)). See ADAM WINKLER, GUN FIGHT: THE BATTLE OVER THE RIGHT TO BEAR ARMS IN AMERICA 95 (2013) (explaining that the Second Amendment was understood as a mechanism to keep the federal government from disarming militias until the 1960s, when scholars began advancing the now-embraced "individual rights" theory).

In *Bruen*, the Supreme Court established a new two-step framework (hereinafter the "*Heller/Bruen* analysis" or "*Heller/Bruen* framework") for deciding the constitutionality of laws passed by Congress or other legislative bodies placing restrictions on the possession or carrying of firearms: first, the district court must decide whether the "plain text" of the Second Amendment "covers an individual's conduct." *Bruen*, 597 U.S. at 17. "More specifically, we ask if the defendant is part of 'the people' and if the 'right' they assert is 'to keep and bear Arms,' as defined in *District of Columbia v. Heller*." *United States v. Morton*, No. 24-5022, 2024 WL 5114316, at *2 (6th Cir. Dec. 16, 2024) (internal citations removed).[2] The right to "keep and bear arms" is ultimately limited by an assessment of whether the weapon in question is in "common use" and "typically possessed by law-abiding citizens for lawful purposes,"

---

[2] The parties do not dispute that Bradley is a part of the "people" as defined in the Second Amendment. U.S. CONST. amend. II.

4

particularly for self-defense. *Heller*, 554 U.S. at 624–25 (internal citations removed). If the Second Amendment's text covers a person's conduct informed fundamentally by these definitions, then the law is presumptively unconstitutional, and the Government has the burden of demonstrating "that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17. "Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individuals' conduct falls outside the Second Amendment's 'unqualified command.'" *Id*. (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)); *see also United States v. Combs*, No. 23-5121, 2024 WL 4512533, at *2 (6th Cir. Oct. 17, 2024).

### A. Part One of the *Heller/Bruen* Analysis – Plain Text Threshold Inquiry

At step one of the *Heller/Bruen* framework, the Court must determine whether § 922(o)[3] and § 5861(d)[4] bar conduct protected by the plain text of the Second Amendment. Because § 922(o) and § 5861(d) implicate the rights of "the people," the question before the Court is whether the "right to keep and bear Arms" encompasses possession of a machinegun

---

[3] The statute reads:
  (1) Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machinegun.
  (2) This subsection does not apply with respect to—
    (A) a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof; or
    (B) any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect.

*See* 18 U.S.C. § 922(o).

[4] The statute reads, in relevant part:
  It shall be unlawful for any person—
    (d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record; ….

*See* 26 U.S.C. § 5861(d).

5

and a firearm silencer. The Court finds that the time-honored right inscribed in the Second Amendment to our nation's Constitution does not extend to dangerous and unusual firearms (*i.e.*, machinegun conversion devices) and unregistered firearm accessories (*i.e.*, silencers); therefore, § 922(o) and § 5861(d) govern conduct outside the scope of the Second Amendment.

          i.        Possession of Machineguns under 18 U.S.C. § 922(o)

The Supreme Court has consistently held that the Second Amendment's plain text does not cover the keeping and carrying of "any weapon whatsoever in any manner whatsoever and for whatever purpose." *Bruen*, 597 U.S. at 21. Instead, the Second Amendment's protections extend to "Arms" that are "in common use at the time" and categorically exclude those which are deemed "dangerous and unusual." *Id*. (citing *Heller*, 554 U.S. at 627) (internal citations omitted). In *Bruen*, the Supreme Court determined that a New York licensing scheme for concealed-carry permits was unconstitutional because "it prevent[ed] *law-abiding* citizens with ordinary self-defense needs from exercising their right to keep and bear arms." *Bruen*, 597 U.S. at 71 (emphasis added). In other words, *Bruen* made clear that law-abiding citizens, not just those associated with law enforcement, could exercise the right to possess and carry a firearm in public spaces for purposes of self-defense. *Bruen* affirmed the holdings in *Heller* and *McDonald v. Chicago*[5] that "the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *Id*. at 10 ("We too agree, and now hold, consistent with *Heller* and *McDonald*, that the

---

[5] 561 U.S. 742 (2010).

6

Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home.").

With this context, Bradley contends that the Second Amendment allows him to innocently engage *within* his home in "the simple gathering and collection of firearms," Doc. 22, PageID 51, at least some of which were shipped to him personally and directly from China. Doc. 2, PageID 6. Bradley argues that, in light of *Bruen*, his mere "possession" of machineguns is conduct "plainly covered by the text of the Second Amendment." Doc. 22, PageID 51. But although Bradley seeks to denounce this prosecution as illegitimate because it purportedly criminalizes his "simple possession" of machineguns, the Court finds his arguments unavailing. *Id.* at PageID 52. For one, the Indictment is concerned with Defendant's *unlawful* and *illegal* possession of *unregistered* firearms, not his lawful, legal possession of registered firearms. *See* Doc. 15, PageID 33.

Secondly, Bradley's argument that "the simple gathering and collection" of machineguns is conduct "plainly covered" by the Second Amendment is contrary to the Supreme Court's decisions in *Heller* and *Bruen*. *Id.* at PageID 51. In *Heller*, the Supreme Court hints strongly that possession of a machinegun by a citizen might not qualify as an ordinary "self-defense" need and further explained that "the Second Amendment does not protect those weapons *not typically* possessed by law-abiding citizens for lawful purposes." 554 U.S. at 624, 625 (emphasis added). The Supreme Court noted that the Second Amendment protects only the type of weapons that were "'in common use at the time'" and stated that limitations on the Second Amendment are viable where they are "fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Id.* at 627 (quoting *United States v. Miller*, 307 U.S. 174, 182 (1939)).

Revisiting the Second Amendment in *Bruen*, the Supreme Court did not overrule *Heller* or *McDonald* "nor any of the reasonable restrictions and regulations discussed in those opinions." *United States v. Mitchell*, 734 F.Supp.3d 702, 706 (N.D. Ohio May 20, 2024); *see also Bruen*, 597 U.S. at 31 ("Having made the constitutional standard endorsed in *Heller* more explicit ...."); *id*. at 72 (Alito, J., concurring) ("Our holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun ... Nor have we disturbed anything that we said in *Heller* or *McDonald* ... about restrictions that may be imposed on the *possession* or carrying of guns.") (emphasis added) (internal citations omitted); *id*. at 80 (Kavanaugh, J., joined by Roberts, C.J., concurring) ("[A]s *Heller* and *McDonald* established and the Court today again explains ... the Second Amendment allows a 'variety' of gun regulations.") (quoting *Heller*, 554 U.S. at 636). As both *Heller* and *Bruen* emphasized, there is no "'right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.'" 597 U.S. at 21 (quoting *Heller*, 554 U.S. at 626). Rather, the Court "noted that, '[l]ike most rights, the right secured by the Second Amendment is not unlimited.'" *Id*. (quoting *Heller*, 554 U.S. at 626).

Responding to the limitations imposed in *Heller*, the Sixth Circuit post-*Heller* has held that the Second Amendment does not authorize the unlawful possession of unregistered machineguns in violation of § 922(o). *See Hamblen v. United States*, 591 F.3d 471, 474 (6th Cir. 2009) ("Thus, whatever the individual right to keep and bear arms might entail, it does not authorize an *unlicensed* individual to possess *unregistered machine guns* for personal use.") (emphasis added). Even in light of *Bruen*, the Sixth Circuit's decision in *Hamblen* is "still binding because nothing in *Bruen* can be reasonably understood to have overtur[n]ed or disturbed the holding or the underlying reasoning in *Hamblen*." *Mitchell*, 734 F.Supp.3d at

706; *see also United States v. Smith*, No. 23-28-DLB-CJS, 2023 WL 6880423, at *2 (E.D. Ky. Oct. 18, 2023) ("Nothing in *Bruen* disturbs this holding, as *Bruen* strictly limited its application to *conduct* protected by the Second Amendment.") (emphasis added); *United States v. Sturgeon*, 2023 WL 6961618, at *2–3 (E.D. Ky. Oct. 20, 2023) (same); *United States v. Wilson*, No. 2:23-cr-20081-TLP-1, 2023 WL 8288989, at *5 (W.D. Tenn. Nov. 7, 2023) ("Remember, *Bruen* dealt with the *conduct* protected by the Second Amendment [*i.e.*, the carrying of a handgun in public for purposes of self-defense]. It said nothing about the *types of weapons* one can possess. So the holding in *Hamblen* remains the law of the Sixth Circuit.").

Thus, in keeping with decisions from within our Circuit and those from the Supreme Court, this Court holds that the ambit of protections of the Second Amendment does not extend to the unlawful possession of machineguns. Applying *Heller*'s reasoning, this Court finds that unregistered machineguns, including machinegun conversion devices, are "dangerous and unusual weapons" that are not "in common use" for self-defense, whether in a historical context or in modernity. *Heller*, 554 U.S. at 627, 624 (internal citations omitted). It strains credulity for this Court to conclude that Bradley's procurement from China and possession of four (4) "machinegun conversion devices with no manufacturer marks or serial numbers" and forty-six (46) "firearms silencers, not registered to him in the National Firearms Registration and Transfer Record," (Doc. 15, PageID 33; Doc. 25, PageID 56), are for "ordinary self-defense needs." *Bruen*, 597 U.S. at 60. Perhaps these contentions would prevail if Defendant was part of a "well regulated [m]ilitia" valiantly resisting foreign occupation of our nation, *see* U.S. CONST. amend. II, but Bradley alleges no such thing. In fact, Defendant never once claims that he possessed this arsenal of "ghost" machineguns and unregistered suppressors for purposes of "self-defense." *See generally* Doc. 22. He merely contends that he

9

is an "avid gun collector." *Id*. at PageID 46. But the Second Amendment extends to arms aficionados no special privileges or exemptions that would absolve them of their duty to otherwise obey the law.

Defendant attempts to argue that machineguns are not "dangerous or unusual" and are in common use because "there are over 740,000 legally registered machineguns in the United States today." *Id*. at PageID 50. As authority for these propositions, Defendant cites to a single decision from the District of Kansas. *Id*. That case, which conflicts with the overwhelming weight of authority and, respectfully, can only be characterized as a non-binding outlier, held that the Second Amendment "applies to [machineguns] because they are 'bearable arms' within the original meaning of the amendment." *United States v. Morgan*, No. 23-10047-JWB, 2024 WL 3936767, at *1 (D. Kan. Aug. 26, 2024), *appeal docketed*, No. 24-3141 (10th Cir. Sept. 20, 2024). This Court can identify "[n]o other case [that] reaches a similar conclusion, and neither party points to any other." *United States v. Johnson*, No. CR 24-20083, 2024 WL 4612888, at *12 (E.D. Mich. Oct. 29, 2024) (examining *Morgan*). More importantly, Defendant makes no effort to persuade this Court as to why it should decline to uphold binding Sixth Circuit authority and should instead follow in the sparsely trodden footsteps of an anomalous decision from a lower court in a sister circuit that, at best, constitutes only persuasive authority and that is currently on appeal.

Moreover, the holding in *Morgan* departs from even the Supreme Court's own guidance on the Second Amendment. The court in *Morgan* began the *Heller/Bruen* framework by dismissing *Heller*'s statement that the Second Amendment does not protect the possession

10

of "dangerous and unusual weapons" as dictum.[6] *Morgan*, 2024 WL 3936767 at *2. The *Morgan* court never once heeded *Heller*'s statement that the Second Amendment protects the possession and use of weapons that were "'in common use at the time.'" *Heller*, 554 U.S. at 627 (quoting *United States v. Miller*, 307 U.S. 174, 179 (1939)). By no means does this Court suggest that the Second Amendment *only* applies to flintlock muskets and sabers (*i.e.*, weapons in common use at the time of the drafting and ratification of the Second Amendment). Such a holding would flatly contradict the Supreme Court's decisions regarding the Second Amendment. *See, e.g.*, *Heller*, 554 U.S. at 582 ("[T]he Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding."); *see also Bruen*, 597 U.S. at 28 ("Thus, even though the Second Amendment's definition of 'arms' is fixed according to its historical understanding, that general definition covers modern instruments that facilitate armed self-defense.").

But where the *Morgan* court departed from the Supreme Court's guidance, as well as the reasoning of courts from nearly every circuit,[7] is in its cursory conclusion of the first step

---

[6] "Lower courts are obligated to follow Supreme Court dicta, particularly where there is not substantial reason for disregarding it, such as age or subsequent statements undermining its rationale." *In re Baker*, 791 F.3d 677, 682 (6th Cir. 2015) (quoting *Am. Civ. Liberties Union of Ky. v. McCreary Cnty., Ky.*, 607 F.3d 439, 447–48 (6th Cir. 2010)). In its reasoning, the *Morgan* court did not articulate any "substantial reason for disregarding" the Supreme Court's statements in *Heller*. *Id*.

[7] Following *Heller*, nearly every circuit court has determined that machineguns do not receive protection under the Second Amendment. These courts found that machineguns are not "in common use" and are "dangerous" and "unusual" weapons falling outside the Second Amendment's protections. *See, e.g., United States v. Zaleski*, 489 F. App'x 474, 475 (2d Cir. 2012) ("Regardless of his membership in the unorganized militia of the State of Connecticut, the Second Amendment does not protect Zaleski's personal possession of machine guns."); *United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame, Unknown Caliber Serial No. LW001804*, 822 F.3d 136, 142 (3d Cir. 2016) ("[W]e repeat today that the Second Amendment does not protect the possession of machine guns. They are not in common use for lawful purposes. They are also exceedingly dangerous weapons. As such, *Heller* dictates that they fall outside the protection of the Second Amendment." (citations omitted)); *United States v. Fincher*, 538 F.3d 868, 874 (8th Cir. 2008) ("[U]nder *Heller*, Fincher's possession of the [machine] guns is not protected by the Second Amendment. Machine guns are not in common use by law-abiding citizens for lawful purposes and therefore fall within the category of dangerous

11

of the *Heller/Bruen* analysis. At this stage, the *Morgan* court did not engage—as this Court does now—with whether machineguns are weapons "in common use at the time," "possessed at home," used for "lawful purposes like self-defense," or are "dangerous and unusual" as provided for in step one of the *Heller/Bruen* framework. *Heller*, 554 U.S. at 624, 627. That court also discounted the government's reliance on *Heller* and held that *Heller* "[did] not say that the Second Amendment does not apply to bearable machineguns." *Morgan*, 2024 WL 3936767 at *2; *cf. Heller*, 554 U.S. at 624 (finding it "startling" to argue that "the National Firearms Act's restrictions on machineguns . . . might be unconstitutional"). Then, the *Morgan* court determined that simply because they are "arms that can be carried in the hand," "by definition, the machinegun and Glock switch are bearable arms within the plain text of the Second Amendment." *Morgan*, 2024 WL 3936767, at *2.

It should be noted, however, that part one of the *Heller/Bruen* framework is not whether the Second Amendment's plain text covers a type of weapon (*i.e.*, a weapon is protected if it is wieldable), but whether the "plain text covers an individual's *conduct*" as it pertains to the keeping and bearing of an arm. *Bruen*, 597 U.S. at 17 (emphasis added); *see also Mitchell*, 734 F.Supp.3d at 705–06 ("The *Bruen* Court was not determining what types of weapons a person could possess. It was instead focused on determining what conduct was protected by the Second Amendment . . . ."). For example, the Supreme Court in *Heller* struck down the District of Columbia's requirement "that firearms in the home be rendered and kept inoperable at all times" because that regulation "[made] it impossible for citizens to *use* them

---

and unusual weapons that the government can prohibit for individual use . . . . Fincher's possession of [machine] guns is not protected by the Second Amendment . . . ."); *United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012) ("We agree with the reasoning of our sister circuits that machine guns are 'dangerous and unusual weapons' that are not protected by the Second Amendment.").

12

for the core lawful purpose of self-defense." 554 U.S. at 630 (emphasis added). Likewise, in finding that "individual self-defense is the central component of the Second Amendment right," the Supreme Court in *Bruen* held that possessing a handgun for self-defense was protected *conduct*. 597 U.S. at 3 (citations and internal quotation marks omitted). By contrast, the court in *Morgan* did not mention self-defense even *once* in the entirety of the opinion. Rather, it asserted that the plain text of the Second Amendment applies to machineguns merely because such weapons are "bearable arms." *Morgan*, 2024 WL 3936767, at *2.

The *Morgan* court did eventually reckon with whether machineguns are "dangerous and unusual" weapons, but it erroneously did so only *after* it proceeded to the second step of the *Heller/Bruen* analysis, which looks to the nation's history and tradition of firearm regulation. At step two, the *Morgan* court held that "machineguns are not unusual" because they "have been in existence for well over a century[,]" and "[t]here are over 740,000 legally *registered* machineguns in the United States today."[8] *Id*. at *4 (emphasis added) (citing Alcohol, Tobacco, Firearms and Explosives, Firearms Commerce in the United States – Annual Statistical Update 2021, https://www.atf.gov/firearms/docs/report/2021-firearms-commerce-report/download). It is true that the number of legally registered civilian-owned machineguns is about 740,000; but "this amount—which is less than .2% of total firearms in

---

[8] The four (4) machinegun conversion devices for which Bradley is charged in the instant case contain "no manufacturer marks or serial numbers" and would not qualify, by definition, as "legally registered." Doc. 15, PageID 33. That there are 740,000 legally registered machineguns in the United States is irrelevant to Defendant's argument because it conflates lawful societal behavior (the amount of people owning a legally registered machinegun) with individual unlawful behavior (Defendant's illegally owning an unregistered machinegun). To illustrate the point using an analogy, suppose an individual does not have a license, yet still drives his car daily. Although his driving may be flawless and his conduct likely victimless, that individual, if he were to be cited for driving without a license, would not legitimately be able to argue that "because millions of other people drive, I should be able to continue driving, too." The fact that millions of other licensed drivers legally operate their vehicles is of no consequence to the underlying illegal conduct at issue—that individual driver operating his car without a license.

the United States—remains too insignificant for machineguns to be considered in common use." *United States v. Simien*, 655 F. Supp. 3d 540, 553 (W.D. Tex. Feb. 10, 2023). Ultimately, the flaw in *Morgan*'s reasoning—that the danger and unusualness of machineguns should be assessed at *Heller/Bruen*'s step two—is that it "ignores *Bruen* itself, which adopts *Heller*'s 'dangerous and unusual' language as the threshold question of whether the Second Amendment's plain text covers the conduct at issue." *United States v. Johnson*, No. CR 24-20083, 2024 WL 4612888, at *13 (E.D. Mich. Oct. 29, 2024) (quoting *Bruen*, 597 U.S. at 21).

Suffice it to say that this Court finds Defendant's arguments unavailing and his reliance on questionable non-binding authority unpersuasive. The Court is instead persuaded by the overwhelming weight of authority supporting a finding that machineguns are "dangerous and unusual" weapons that are not "in common use" for self-defense. *Heller*, 554 U.S. at 627, 624 (internal citations omitted); *see e.g.*, *Hamblen v. United States*, 591 F.3d 471, 474 (6th Cir. 2009) ("[W]hatever the individual right to keep and bear arms might entail, it does not authorize an unlicensed individual to possess unregistered machine guns for personal use."); *Friedman v. City of Highland Park*, 784 F.3d 406, 408 (7th Cir. 2015) ("*Heller* deemed a ban on private possession of machine guns to be obviously valid. . . . The [*Heller*] Court took from *Miller* the rule that the Second Amendment does not authorize private persons to possess weapons such as machine guns and sawed-off shotguns that the government would not expect (or allow) citizens to bring with them when the militia is called to service."); *United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012) ("We agree with the reasoning of our sister circuits that machine guns are 'dangerous and unusual weapons' that are not protected by the Second Amendment. . . . A modern machine gun can fire more than 1,000 rounds per minute, allowing a shooter to kill dozens of people within a matter of seconds. Short of bombs,

missiles, and biochemical agents, we can conceive of few weapons that are more dangerous than machine guns.") (internal citation omitted); *United States v. Zaleski*, 489 F. App'x 474, 475 (2d Cir. 2012) (relying on *Heller* to determine that "the Second Amendment does not protect [the defendant's] personal possession of machine guns"); *United States v. Fincher*, 538 F.3d 868, 874 (8th Cir. 2008) ("Machine guns are not in common use by law-abiding citizens for lawful purposes and therefore fall within the category of dangerous and unusual weapons that the government can prohibit for individual use.").

Here, Defendant is charged with the illegal possession of machinegun conversion devices "with no manufacturer marks or serial numbers." Doc. 15, PageID 13. The arms in question, machineguns, are "dangerous and unusual" weapons. Precisely because the conduct alleged here is the illegal possession of a machinegun, the machineguns at issue are not being used by "law-abiding citizens for lawful purposes[,]" such as self-defense. *Heller*, 554 U.S. at 625. The underlying conduct in question, failing to register firearms, is not conduct traditionally protected by the Second Amendment. Therefore, Defendant's as-applied challenge to § 922(o) fails. *See United States v. Smith*, No. CR 23-28-DLB-CJS, 2023 WL 6880423, at *2 (E.D. Ky. Oct. 18, 2023) (finding that § 922(o) regulates conduct outside the scope of the Second Amendment); *United States v. Wilson*, No. 2:23-CR-20081-TLP-1, 2023 WL 8288989, at *5 (W.D. Tenn. Nov. 7, 2023) (same); *United States v. Sturgeon*, No. CR 23-6-DLB-CJS-1, 2023 WL 6961618, at *3 (E.D. Ky. Oct. 20, 2023) (same).[9]

---

[9] The Government additionally argues in the alternative that "machinegun conversion devices … are not '[a]rms' within the meaning of the Second Amendment. Rather, machinegun conversion devices are firearms accessories." Doc. 25, PageID 62. Having already found that the Defendant's alleged conduct is outside the scope of the Second Amendment, this Court will not separately engage in this analysis. This Court does note, however, that while the Supreme Court has not yet weighed in on the scope of Second Amendment protections for weapons components, several courts have drawn a distinction between components necessary for the

### ii. Possession of Silencers under 26 U.S.C.A. § 5842

Count Two of the Indictment charges Defendant with "knowingly receiv[ing] and possess[ing] a firearm, that is forty-six (46) firearms silencers, not registered to him in the National Firearms Registration and Transfer Record" in violation of 26 U.S.C.A. §§ 5842, 5861(d), and 5871. Doc. 15, PageID 33. Defendant does not seem to make any formal argument as to the legality of his possession of the at-issue silencers other than a cursory assertion that he was "engaged" in the "simple gathering and collection of firearms." Doc. 22, PageID 51. In response, the Government argues that there is "no Second Amendment right to possess silencers because silencers are not 'Arms' within the meaning of the Amendment." Doc. 25, PageID 64. The Government alternatively argues that the "plain text of the Second Amendment does not extend to the possession of a silencer because it is a dangerous and unusual weapon." *Id.*

The Court must determine whether the Second Amendment protects an individual's right to keep and bear silencers. To do so, the Court must first address the threshold question of whether the plain text of the Second Amendment covers the conduct at issue—the possession of unregistered silencers. Doc. 15, PageID 33. Simply put, the inquiry is whether the Second Amendment's definition of "arms" encompasses silencers, which are "modern instruments" that "were not in existence at the time of the founding." *Bruen*, 597 U.S. at 28.

---

weapon to function (which would likely render the components a protectable 'arm' within the meaning of the Second Amendment) and components that are not (and are beyond the purview of the Second Amendment). *See, e.g., Johnson*, 2024 WL 4612888, at *12 ("As a *mere* component, designed to modify the weapon's firing, the Glock switch is not a protectable firearm. Without a switch, a Glock still is a Glock and fires as any other handgun. It is no answer to say that a Glock is only functional as a machinegun because of a Glock switch. With or without the switch, the device still is functional as a firearm, and the switch merely enhances the rate of fire."); *see also United States v. Alsenat*, 734 F.Supp.3d 1295, 1308 (S.D. Fla. May 20, 2024) ("Given the above historical definitions, an MCD [machinegun conversion device], possessed by itself, is not an 'Arm' protected by the Second Amendment. An MCD by itself is not a 'weapon of offence' or 'any thing that a man ... useth in wrath to cast at or strike another.'") (citation omitted).

The Supreme Court has provided ample guidance as to what constitutes "arms" for the Second Amendment. "The 18th-century meaning is no different from the meaning today." *Heller*, 554 U.S. at 581. Then, dictionaries defined "arms" as "weapons of offense, or armour of defence," and "any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another." *Id*. (quoting 1 Dictionary of the English Language 106 (4th ed.) (reprinted 1978). Now, "arms" are defined as "a means (such as a weapon) of offense or defense." *Arm*, Merriam-Webster, https://www.merriam-webster.com/dictionary/arm (last visited Dec. 30, 2024). "Thus, to receive Second Amendment protection, the instrument must be a bearable weapon for offense or defense." *United States v. Saleem*, 659 F. Supp. 3d 683, 695 (W.D.N.C. 2023), *aff'd*, No. 23-4693, 2024 WL 5084523 (4th Cir. Dec. 12, 2024).

Furthermore, the Supreme Court found that, by its plain meaning, the phrase to "'keep Arms'" in the Second Amendment is to "'have weapons.'" *Heller*, 554 U.S. at 582. "At the time of the founding, as now, to 'bear' meant to 'carry.'" *Id*. at 584 (citations omitted). Read in unison, the phrase to "bear arms . . . has a meaning that refers to carrying [a weapon] for a particular purpose—confrontation," or self-defense. *Id*. The Court has explained that the instrument at issue must be one an individual could "wear, bear, or carry ... upon the person or in the clothing or in a pocket, for the purpose ... of being armed and ready for offensive or defensive action in a case of conflict with another person." *Bruen*, 597 U.S. at 32 (internal citations omitted). Therefore, the Second Amendment's right "to keep and bear Arms" protects an individual's right to carry or possess a bearable weapon for the purposes of confrontation or self-defense.

Turning to the issue of whether the Second Amendment protects an individual's right to keep and bear silencers, this Court once again joins the overwhelming consensus of courts

17

in finding that it does not. *See, e.g.*, *United States v. Cox*, 906 F.3d 1170, 1186 (10th Cir. 2018) ("A silencer is a firearm accessory; it's not a weapon in itself (nor is it 'armour of defence'). Accordingly, it can't be a 'bearable arm' protected by the Second Amendment."); *Saleem*, 659 F. Supp. 3d at 697 ("[S]ilencers, because they are not independently operable and do not serve any central self-defense purpose, are not firearms within the meaning of the Second Amendment but are instead firearm accessories that fall outside its protection."); *United States v. Kaczmarek*, No. 1:21-CR-20155, 2023 WL 5105042, at *2 (E.D. Mich. Aug. 9, 2023) ("Even so, a silencer is not a 'firearm.' Rather, a 'silencer is a firearm accessory' and does not fall within the scope of the Second Amendment's protection."); *United States v. Hasson*, No. GJH-19-96, 2019 WL 4573424, at *4 (D. Md. Sept. 20, 2019), *aff'd*, 26 F.4th 610 (4th Cir. 2022) ("A silencer is not a weapon in and of itself, but simply a 'firearm accessory,' . . . and therefore not a 'bearable arm' protected by the Second Amendment.") (internal citation omitted); *United States v. Berger*, 715 F. Supp. 3d 676, 702 (E.D. Pa. Feb. 6, 2024) (concluding that a silencer is not a bearable "Arm", but "merely an accessory which is unnecessary to the essential operation of a firearm."); *United States v. DeFelice*, No. 3:23-cr-116, 2024 WL 3028425, at *7 (D. Conn. June 17, 2024) (collecting cases); *United States v. Lightner*, No. 8:24-cr-21, 2024 WL 2882237, at *3 (M.D. Fla. June 7, 2024) (holding that silencers are accessories and not "bearable arm[s]").

       This Court holds that a silencer is not an "arm" or a "weapon" as defined in the Second Amendment because it is not inherently useful "in case of confrontation" as a "[w]eapon of offence" or an "armour of defence." "A silencer is not itself used 'to cast at or strike another,' it does not contain, feed, or project ammunition, and it does not serve any intrinsic self-defense purpose." *Hasson*, 2019 WL 4573424, at *4. "'[A] silencer cannot, on its own, cause

18

any harm, and it is not useful independent of its attachment to a firearm,' such that 'it is not a weapon in and of itself.'" *Saleem*, 659 F. Supp. 3d at 697 (citation omitted). This Court determines that silencers, because they are not independently operable and do not serve any central purpose for self-defense or confrontation, "are not firearms within the meaning of the Second Amendment but are instead firearm accessories that fall outside its protection." *Id*. Thus, Defendant's as-applied challenge to § 5842 fails.

### B.  Part Two of the *Heller/Bruen* Analysis – History and Tradition

Because this Court has found that § 922(o) and § 5842 regulate conduct outside of the scope of the Second Amendment, "it is not necessary for the Court to engage in a step-two analysis of whether the statute[s] [are] consistent with the Nation's historical tradition of firearms regulation." *Mitchell*, 734 F.Supp.3d at 709.

### IV.  CONCLUSION

For the reasons stated, the Court **DENIES** Defendant's Motion to Dismiss the Indictment. Doc. 22.

**IT IS SO ORDERED.**

February 13, 2025

Jeffery P. Hopkins
United States District Judge

19